**D & H DISTRIBUTING CO., INC., Appellee,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Risk Protection International, LLC, and Bohdan Sosiak,**

**Appeal of: National Union Fire Insurance Company, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 2002.
Filed Feb. 14, 2003.

David A. Borkovic, Pittsburgh, for appellant.

James J. Kutz, Harrisburg, for D & H Distributing, appellee.

BEFORE: STEVENS, ORIE MELVIN, and KELLY, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 This appeal arises from a civil suit initiated by Appellee, D & H Distributing Company, Inc., against Appellant and Risk Protection International and Bohdan Sosiak. The complaint asserts six counts for breach of contract and a bad faith claim under 42 Pa.C.S.A. § 8371 against Appellant arising out of Appellant's refusal to pay claims under two export credit insurance policies and tort claims against the remaining defendants. Complaint, C.R. at 6. Appellant, National Union Fire Insurance Company, appeals from the Order denying its Petition to Compel Arbitration and Stay Proceedings. For the following reasons, we reverse and remand.

¶ 2 D & H is an international distributor of computer hardware and software. *Id.* ¶ 10. Appellant is an insurance company that issued the two policies at issue, which insured against certain risks of nonpayment by foreign purchasers of computer equipment and software from D & H. *Id.* ¶¶ 11–13, 15, and 18. The complaint asserts that D & H sold its products to several South American companies, and a number of purchasers defaulted on payments. *Id.* ¶¶ 21, 37, 54, 66, 84. D & H submitted claims under Appellant's export credit policies, and Appellant refused payment alleging D & H had failed to comply with certain of the policies' terms and conditions. On April 4, 2000, D & H commenced this action by filing a writ of summons. Appellant responded by making a written demand for arbitration pursuant to the arbitration clause contained in each policy. D & H refused to arbitrate and proceeded to file its complaint. Appellant next filed a petition to compel arbitration of the contractual dispute and stay the proceedings as to the balance of the claims. On July 6, 2001, after considering the parties' briefs and arguments thereon, the trial court entered its Order denying the petition. This timely appeal followed.[1]

¶ 3 Appellant presents the following questions for our review:

A.  WHETHER UNDER THE FEDERAL ARBITRATION ACT, AS WELL AS STATE LAW, THE PHRASE 'EITHER PARTY MAY ... DEMAND ... ARBITRATION' IS MANDATORY AND REQUIRES THE ARBITRATION OF ALL DISPUTES AFTER DEMAND[?]

B.  WHETHER THE FEDERAL ARBITRATION ACT PREEMPTS ANY PENNSYLVANIA RULE THAT BAD FAITH CLAIMS ARE NOT SUBJECT TO ARBITRATION, AND WHETHER PENNSYLVANIA LAW PERMITS ARBITRATION OF BAD FAITH CLAIMS[?]

C.  WHETHER THE PRESENCE OF OTHER DEFENDANTS WHO ARE NOT PARTIES TO AN ARBITRATION AGREEMENT NEGATES A DUTY TO ARBITRATE, AND WHETHER ALL PROCEEDINGS SHOULD BE STAYED PENDING ARBITRATION[?]

Appellant's brief at 3.

Our standard of review of a denial of ... a petition to compel arbitration 'is

---

1.  This appeal is an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(a)(8) and 42 Pa.C.S.A. §§ 7320(a)(1) and 7342(a). *See*

*Goral v. Fox Ridge, Inc.,* 453 Pa.Super. 316, 683 A.2d 931, 933 fn. 1 (1996).

limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.' *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.,* 739 A.2d 180, 186 (Pa.Super.1999).

Where a party to a civil action seeks to compel arbitration of that action, a two-part test is employed to determine if arbitration is required. First, the trial court must determine if a valid agreement to arbitrate exists between the parties. *Id.* Second, if the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. *Id.* 'The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally.' *Henning v. State Farm Mut. Automobile Ins. Co.,* 795 A.2d 994, 996 (Pa.Super.2002), citing, *State Farm Mut. Automobile Ins. Co. v. Coviello,* 233 F.3d 710, 716 (3rd Cir. 2000).

*Pittsburgh Logistics Sys., Inc. v. Professional Transp. & Logistics, Inc.,* 803 A.2d 776, 779 (Pa.Super.2002). Moreover,

[a]rbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists. Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court.

*Smith v. Cumberland Group,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997) (citations omitted). Our review is plenary, as it is with any review of questions of law. *Liddle v. Scholze,* 768 A.2d 1183, 1185 (Pa.Super.2001).

¶ 4 Instantly, there is no dispute that the asserted contractual claims are covered by the scope of the arbitration clause.[2] The critical question here concerns whether all such claims must be arbitrated upon demand or are merely permissive in nature. Of significance to this appeal, both policies contain the following arbitration provision:

## PENNSYLVANIA ARBITRATION AMENDATORY ENDORSEMENT

It is hereby agreed and understood that, Article VI.B.[3] of the Policy, ARBITRATION, has been deleted in its entirety and replaced with the following:

### B. ARBITRATION

Should any dispute arise between the Insured and the Company under this policy, either may make written demand upon the other to submit the dispute for arbitration. The arbitration proceedings shall take place in the state shown in Item I [Pennsylvania] of the Policy Declarations. The Insured and the Company must notify the other of the competent appraiser each has selected. The two appraisers will promptly choose a competent and impartial umpire. Should either the Insured or the Company fail to appoint an appraiser or should the two appraisers so chosen fail to agree upon an umpire, then the parties to the arbitration shall apply to the appropriate federal or state court in the state shown in Item I of the Policy Declarations for the appointment of such appraiser. Each appraiser will sepa-

---

**2.** Whether the bad faith claim falls within the scope of the arbitration clause is not ripe for our review. *See* discussion, *infra,* beginning at page 1170.

**3.** Both parties concur that the Endorsement was actually intended to replace the form Arbitration clause at Article VII.C., and not Article VI.B as referenced.

rately state in writing the amount of the loss. If the appraisers submit a written report of agreement on the amount of the loss, the agreed amount will be binding upon the Insured and the Company. If the appraisers fail to agree, the appraisers will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding upon the Insured and the Company. Each party shall bear the expenses of its designated appraiser and shall jointly and equally share with the other the expense of the umpire and of the arbitration. Except as specifically provided, nothing in this article is intended to or shall in any manner limit or restrict the rights of the Insured or the Company or confer any rights to the Insured or to the Company. No award of the arbitrators or judgment of any court with respect to any award, dispute or controversy shall be entered in an amount exceeding the applicable limits set forth in this policy.

Trial Court Opinion, 1/4/02, at 2–3, Endorsement 14 to Policy No. 649–8292 and Endorsement 17 to Policy No. 649–8481, attached as Exhibit A to Complaint at C.R. 6.

¶ 5 Appellee asserts that a change of language in the arbitration provision so as to provide that "either may make written demand upon the other to submit the dispute for arbitration ...," in lieu of the language that "the matter in dispute shall be referred [to arbitration] ...," evidences the parties' intent to make arbitration discretionary. Appellant counters that there is no ambiguity, and the courts have consistently viewed the use of the amendatory language as mandatory in the arbitration context. We find the Appellant's position persuasive.

¶ 6 The Appellant cites to a number of federal cases interpreting similar permis-

sive phraseology. For example, in *United States v. Bankers Insurance Company*, 245 F.3d 315 (4th Cir.2001), the provision at issue reads as follows:

Article VIII Arbitration

If any misunderstanding or dispute arises between the Company Bankers and the FIA with reference to any factual issue under any provisions of this Arrangement ... such misunderstanding or dispute **may be submitted to arbitration** for a determination that shall be binding upon approval by the FIA.

*Id.* at 318 (emphasis supplied).

¶ 7 In upholding the obligatory nature of arbitration once demanded, the Circuit Court of Appeals reasoned:

Although the arbitration provision of the Arrangement is framed in permissive terms, its use of permissive phraseology is not dispositive. In *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), we had occasion to review and interpret a similar arbitration provision. We held that a clause providing that 'disputes ... may be referred to arbitration' has the effect of giving 'an aggrieved party the choice between arbitration and abandonment of his claim, i.e., he 'may' either arbitrate or abandon the claim.' *Id.* at 879. As Judge Widener properly observed the contrary interpretation 'would render the arbitration provision meaningless for all practical purposes,' since parties 'could always voluntarily submit to arbitration.' *Id.*

*Id.* at 320–321; *see also, American Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir.1990) (stating "the purpose of 'may' was to give an aggrieved party the choice between arbitration and abandonment of its claim."); *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 683 F.2d 242, 246–47 (7th Cir.1982) (hold-

ing "may refer the grievance to arbitration" was mandatory); *United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273 (3rd Cir.1979) (finding "may" demand arbitration was mandatory); and *J.C. Bonnot v. Local # 14,* 331 F.2d 355, 359 (8th Cir.1964) (Blackmun, J.) (stating "The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration.").

¶ 8 Although this Court has never before specifically addressed whether similar arbitration clauses are permissive or mandatory, we have had occasion to consider the scope of automobile insurance policies containing similar language in the context of UM/UIM disputes and are guided by the results. In *Brennan v. General Accident Fire & Life Assurance Corp.,* 524 Pa. 542, 574 A.2d 580 (1990), almost identical wording received the same construction place upon it by the various Federal Circuit Courts. In *Brennan,* the decedents had an automobile insurance policy with appellee insurance company, which provided for underinsured motorist coverage. Appellant attempted to effect an amicable settlement, but appellee refused to make any payment, claiming that its policy allowed it to setoff monies received by its insured from a third party settlement. Appellant invoked an arbitration provision and instructed appellee to appoint an arbitrator. Appellee ignored the request, and appellant filed a petition to compel arbitration with the court of common pleas. The arbitration clause provided:

> If we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, **either party may make a written demand for arbitration.** In this event each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty days, either may request that selection be made by a judge of a court having jurisdiction. Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

*Id.* 524 Pa. at 547–548, 574 A.2d at 582 (emphasis supplied). The trial court granted the petition.

¶ 9 Following the arbitration award in Brennan's favor, the insurance company filed a petition to vacate the award of the arbitrators. The trial court denied the petition. The insurer then appealed to this Court arguing that the setoff issue was waived because it was not presented to the arbitration panel and that the arbitrators had exceeded their scope of authority. We agreed with the insurer and reversed. Allocatur was subsequently granted, and the Supreme Court reversed finding that the arbitrators properly exercised their discretion and found that Brennan had a right to recover under the policy. In reviewing the scope of the arbitration clause the Supreme Court noted:

> A review of the language of the arbitration clause reveals that arbitration is **mandated** whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages. There is no limit to the jurisdiction of the arbitrators over what issues may be submitted and in fact the policy declares that all disputes between the insurance company and the insured will be arbitrated.

*Id.* 524 Pa. at 549, 574 A.2d at 583 (emphasis supplied).

¶ 10 Similarly, in *McGinley v. Allstate Ins. Co.,* 352 Pa.Super. 139, 507 A.2d 420 (1986), this Court reversed the trial court's denial of a petition to appoint a neutral arbitrator in accordance the insured's policy, which contained the following provision:

ARBITRATION

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages under this Part or

2. As to the amount of damages; **either party may make a written demand for arbitration.** In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

*Id.* at 421 (emphasis supplied). In reaching our decision we reiterated verbatim the reasoning stated in *Cunningham v. Prudential Property & Casualty Ins. Co.,* 340 Pa.Super. 130, 489 A.2d 875 (1985):

This provision is clear. Uninsured motorist claims, if agreement cannot be reached by the parties, must be submitted to ... arbitration. Recovery against Prudential cannot be had under its policy unless there has been (1) agreement or (2) arbitration. These are conditions precedent to each appellant's right to be compensated according to the uninsured motorist feature in Prudential's policy. Without prior compliance with one or the other, Prudential cannot be made to pay an uninsured motorist claim. In the instant case, the averments of the complaint disclose that there has been nei-

ther agreement nor arbitration with respect to appellants' claims.

'It is the policy of the law to favor the settlement of disputes by arbitration and to promote the swift and orderly disposition of claims.' Therefore, 'court proceedings should not be read into the agreement to arbitrate.... The arbitration clause ... indicates that the parties contemplated one method, and one method only, for the resolution of disputes under [the uninsured motorist coverage]. That method was arbitration and all such disputes [must] be so decided.'

*Id.* at 878 (citations omitted).[4]

■ ¶ 11 The implication of these decisions is that this Court does not distinguish between the use of the term "may" or "shall" in the arbitration context. Instead, we generally recognize that the language permitting either party to demand arbitration operates to require the parties to submit to arbitration, as it clearly demonstrates that the parties contemplated the use of arbitration proceedings as the forum for resolution of disputes. The provision here at issue clearly evidences that the parties entered into an agreement to arbitrate disputes at either party's choosing. There is no good reason for including an arbitration provision if it can be defeated by a unilateral refusal to arbitrate. We find D & H cannot vitiate Appellant's choice simply by filing a lawsuit before the demand to arbitrate is made. We do not read the language used as requiring a race to the courthouse to preclude notice of a demand to arbitrate. Rather, we agree with the federal court's interpretation that the use of the word "may" merely reflects

4. We note that the Prudential policy referenced in the *Cunningham* case contained the following language: "If no agreement can be reached, the matter will be submitted for arbi-

tration according to the provisions of the Pennsylvania Arbitration Act of 1927. Upon written demand of either party, each party will select an arbitrator."

a party's ability to forego or abandon their claim. In the absence of abandonment or settlement, a claim that falls within the scope of the contract must be arbitrated upon demand. In other words, the clause reflects that arbitration does not require the mutual consent of both insurer and insured. Therefore, we find in accordance with the policy language, arbitration became compulsory at the request of either party. We, therefore, reverse the Order denying Appellant's petition to compel arbitration.

¶ 12 Turning to Appellant's remaining issues we find they are not properly before this Court at this time. The only appealable matter before this Court concerns Appellant's petition to compel arbitration, and, as such, our review is confined to the narrow issue of whether the petition was properly denied. *See Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998), (holding that where appellant's preliminary objections both in nature of demurrer and in nature of motion to compel arbitration were denied, appellate review is limited to that portion of the court's order which denied the motion to compel arbitration; the other issues are not ripe for review); *see also Messa v. State Farm Ins. Co.,* 433 Pa.Super. 594, 641 A.2d 1167, 1168 (1994) (stating that when presented with a petition to compel arbitration, the trial court is limited to determining whether an agreement to arbitrate exists and if the dispute falls within the provision; the court is not free to examine the merits of the underlying claims or defenses). Once the trial court denied Appellant's petition to compel arbitration the application for a stay of proceedings pending arbitration became moot. Thus, the trial court's discretion concerning whether to stay litigation involving the non-arbitrating parties pending resolution of the arbitration proceedings was not exercised. Moreover, the trial court did not consider the scope of the arbitration clause, and thus, Appellant's arguments with respect to whether or not the Federal Arbitration Act preempts Pennsylvania's bad faith statute were not addressed by the trial court in the first instance. Accordingly, resolution of such issues must wait for another day.

¶ 13 Order reversed. Case remanded to the Court of Common Pleas of Dauphin County with instructions to enter an order granting National Union Fire Insurance Co., Inc.'s petition to compel arbitration of D & H Distributing Company, Inc.'s contract claims. Jurisdiction is relinquished.