J-A09028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS S. ETZLER, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF RECYCLING EQUIPMENT CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GUNTHER "BUD" ETZLER, STEPHEN P. ETZLER, WILMA D. ETZLER, RECYCLING EQUIPMENT CORP., INC., | |
| Appellee | No. 2288 EDA 2014 |

Appeal from the Judgment Entered October 9, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 09-25465 and 09-26544

BEFORE:  BOWES, DONOHUE and STABILE, JJ.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED NOVEMBER 17, 2015**

I agree with the learned majority that Thomas's claims at Counts V and VI are arbitrable.  I also agree with the majority that Count III, appointment of a custodian, is not arbitrable as the arbitration provision in the Buy-Sell Agreement was not intended to displace remedies available to minority shareholders under the corporation law generally.  The appointment of a custodian is a remedy available under the Business Corporation Law to a shareholder with more than a five percent ownership interest in the

corporation and to whom the directors "have acted illegally, oppressively, or fraudulently." **See** 15 Pa.C.S. § 1767(a).

I depart from my esteemed colleagues, however, in their conclusion that Counts I, II, and IV are arbitrable. "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." **D & H Distrib. Co. v. Nat'l Union Fire Ins. Co.**, 817 A.2d 1164, 1166 (Pa.Super. 2003) (quoting **Henning v. State Farm Mut. Automobile Ins. Co.**, 795 A.2d 994, 996 (Pa.Super. 2002)). "Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue." **Setlock v. Pinebrook Pers. Care & Ret. Ctr.**, 56 A.3d 904, 909-910 (Pa.Super. 2012).

Paragraph 18, "Arbitration," provides:

> Any party to this Agreement shall have the right to demand that **a controversy or claim arising out of or related to this Agreement, or the breach thereof**, shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association of Philadelphia, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The costs of such arbitration shall be borne by the losing party.

(emphasis supplied).

I acknowledge that similarly worded arbitration clauses have been labeled "unlimited" and our courts have held that any claims implicating the contract can be compelled to arbitration, whether they sound in contract or

tort. *See Dodds v. Pulte Home Corporation*, 909 A.2d 348, 351 (Pa.Super. 2006). However, more recently, this Court has explained that "[e]ven though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication." *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012) (citations and quotation marks omitted). For instance, in *Setlock*, *supra*, we refused to "make the leap" and find claims for wrongful death arbitrable pursuant to a residential agreement that merely set forth the residents' financial obligations, finding that the dispute did not arise from the matters covered by the agreement. We held that "where a contract in no way discusses liability for a cause of action, the arbitration clause in the unrelated contract between the parties cannot be read so broadly as to encompass any and all disputes that arise between the parties." *Setlock*, *supra* at 912 n.7.

The stated purpose of the Buy-Sell Agreement was to ensure that ownership of the closely held corporation remained in the hands of those engaged in the conduct of the business. To that end, the Agreement placed restrictions on the lifetime transfer of the stock, identified the events that trigger a forced sale, and specified the basis for valuation of the shares for purposes of a buy-out. The Agreement also established the timeline for the acceptance of the offer by the Corporation or the remaining shareholders,

the method for determining the purchase price, and the manner of transferring the shares.

I do not believe that Counts I and IV, both of which involve claims of wrongful termination, are arbitrable simply because termination is a triggering event for the operation of the Buy-Sell Agreement. Count I, which seeks a declaration of the validity of actions taken by Gunther and Wilma as purported directors of the Recycling Equipment Corporation ("Corporation"), including their demotion of Thomas and promotion of Gunther to President, involves matters of corporate governance. The Buy-Sell Agreement simply does not address matters of corporate management. Count IV is designed to effect a tort recovery for the same alleged misconduct that forms the basis for the declaratory relief sought at Count I.[1] I believe the remedy for wrongful termination is wholly distinct from the valuation and transfer of Thomas's shares in the Corporation, which is the subject of the Agreement.

At Count II, Thomas asserted a derivative claim for the Appellees' breach of their fiduciary duties to the Corporation and its shareholders based on, *inter alia*, self-dealing and misappropriation of corporate assets. Thomas pled that their misconduct "significantly depleted the value of the Company and have set it for a course of self-destruction." Complaint, Count II ¶61.

---

[1] Notably, Thomas seeks monetary damages, not reinstatement, for his alleged wrongful termination.

The majority concedes that Count II states a derivative claim for breach of fiduciary duties owed to the Corporation. Nonetheless, it focuses on allegations of financial irregularities, breach of a duty to "maximize corporate assets," and a duty to maintain accurate and complete financial records, and concludes that these averments all relate to the determination of the book value of the stock, and thus, are arbitrable. Majority Memorandum, at 13.

I disagree with the majority's premise that the allegation of financial irregularities is *ipso facto* a challenge to the calculation of book value. Furthermore, I believe Count II states a viable shareholder derivative claim authorized under the Business Corporation Law. A shareholder derivative action is an "action or proceeding brought to enforce a secondary right on the part of one or more shareholders of a business corporation against any present or former officer or director of the corporation because the corporation refuses to enforce rights that may properly be asserted by it." 15 Pa.C.S. § 1782(a); **see also** Pa.R.Civ.P. 1506(a). Financial irregularities, waste of corporate assets, alleged *ultra vires* acts by ostensible directors, and self-dealing are well-recognized grounds for seeking relief in a shareholder derivative action. Since the Agreement does not address or purport to govern such actions, I do not find the claims asserted in Count II arbitrable.

Thus, I would reverse and remand for a judicial disposition of Counts I, II, and IV, in addition to Count III.